IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-111 |
| GERALD GARRETT | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Louis D. Lappen, Acting United States Attorney for the Eastern District of Pennsylvania, and K.T. Newton, Assistant United States Attorney for the District, hereby files its Sentencing Memorandum.

**I.    STATUS OF THE DEFENDANT**

On March 23, 2017, defendant Gerald Garrett, having waived indictment, entered a plea of guilty to an information, in Criminal No. 17-111, charging him with: in Count One, interstate transportation of stolen property, in violation of 18 U.S.C. § 2314.

Garrett has been held in federal custody since December 7, 2016. He is scheduled to appear before the Court for sentencing on Friday, July 14, 2017.

**II.   MAXIMUM PENALTIES**

**Count 1 - 18 U.S.C. § 2314 (interstate transportation of stolen property)**
Ten years imprisonment, three years supervised release, a $250,000 fine, and a $100 special assessment.

The maximum statutory penalty faced by Gerald Garrett is 10 years' imprisonment, a 3 year period of supervised release, a $250,000 fine, and a $100 special assessment, as well as $5,000 in restitution.

**III.     GUIDELINE IMPRISONMENT/SUPERVISED RELEASE/FINE RANGES**

The Probation Office has correctly calculated the defendant's offense level, Criminal History category and sentencing guidelines range.   PSR ¶¶ 19-28.

The applicable guideline is U.S.S.G. § 2B1.1.   The amount of loss was approximately $5,000.   Garrett's base offense level, therefore, is 6, pursuant to § 2B1.1(a)(2).   There is no increase to that level, pursuant to § 2B1.1(b)(1)(A), as the loss is less than $6,500.   Mr. Garrett is entitled to a two level downward adjustment departure for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).   Mr. Garrett's final offense level, therefore, is 4.

Gerald Garrett has a total of 9 Criminal History Points, which places him in Criminal History Category V.   See PSR ¶¶ 30-44.   His advisory sentencing guideline range on the count of conviction is therefore 2 to 8 months incarceration.

**IV.     SENTENCING RECOMMENDATION**

Gerald Garrett, who claims he was hearing hallucinatory voices at the time, stole a signed LeRoy Neiman print of Muhammad Ali from the Muhammad Ali Center in Louisville, Kentucky on October 22, 2016.   To his credit, Mr. Garrett has admitted his theft, but did so too late for the recovery of the print.   When he was identified as the thief and was confronted by his probation officer in Philadelphia on October 28, 2016, Mr. Garrett admitted that he had stolen the print but lied to his probation officer, stating that he had left the print in a mailbox in Louisville, Kentucky.   PSR ¶ 11.   In reality, the print was still in Garrett's possession at that time. PSR ¶¶ 11, 14.   According to Garrett, he, with his girlfriend Tina Williams, left for Louisville the next day to return the print, but instead took it to a post office in Alexandria, VA.   The signed print has not been found.   As a direct result of Garrett's actions in stealing the print

and then failing to turn over the print when confronted by his probation officer, this piece of cultural heritage, created and signed by an artist now deceased, is gone from the Muhammad Ali Center. This illegal activity, conducted by Gerald Garrett while on supervised release cannot be minimized or ignored.

A prison sentence of 2 to 8 months is warranted and called for by application of the Sentencing Guidelines. The government contends that Garrett's unlawful conduct requires the imposition of a term of imprisonment at the top of his guideline range. Such unlawful conduct must be deterred, and the most effective deterrent for Garrett, as well as others who may be tempted in the same way, is imprisonment. This sentence would be the longest sentence Garrett has served in his lifetime.

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) indicates that the most appropriate sentence is one within the advisory guideline range of 18 to 24 months for the conspiracy and bank fraud offenses, followed by the mandatory 24 month sentence for aggravated identity theft. As the Supreme Court has recognized, the Sentencing Guidelines are an initial benchmark, and remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or

vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

**Consideration of the 3553(a) Factors**

Restitution, which is mandatory, is an issue in this case

**1.    The nature and circumstances of the offense and the history and characteristics of the defendant**

a. The nature and circumstances of the offense

As discussed above, Gerald Garrett's crime, although of short duration, is serious. As a result of his actions, the Muhammad Ali Center and the public has lost a piece of cultural heritage. Accordingly, a term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment" for these offenses. § 3553(a)(2).

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

b. History and characteristics of the defendant

Gerald Garrett, 59 years old, is a Philadelphia native who was raised, with his sister, by his mother and stepfather in a stable environment. PSR ¶¶ 63-64. He is divorced, with three grown sons in their thirties from his marriage, and a 22 year old daughter from another relationship. PSR ¶66. He is currently in a relationship with Tina Williams. PSR ¶¶ 67-71.

After his graduation from Olney High School in 1976, he worked in the Philadelphia area until he joined the United States Air Force in 1980. PSR ¶¶ 65, 81. According to Mr. Garrett, he worked as a security police officer in the Air Force and was honorably discharged in 1989. PSR ¶65. Between 2004 and 2012, Garrett worked in landscaping, electrical and plumbing cash jobs. PSR ¶ 82. Prior to being taken into custody, Garrett was working in the patient transportation department of the Department of Veterans Affairs at 3900 Woodland Avenue in Philadelphia. PSR ¶ 82. In addition, he has received Supplemental Security Income since 2012. PSR ¶ 82.

Garrett has been treated for Type II diabetes since 2015. PSR ¶ 74. He has also been diagnosed with Major Depressive Disorder and Schizophrenia, and has been prescribed mirtazapine and risperdone, both psychotropic medications. PSR ¶ 76. Garrett had told his probation officer that he had not been taking his prescribed medication in October 2016. PSR ¶ 77. Garrett first used cocaine in 2012 and enrolled in intensive outpatient treatment in February 2015, which he completed in June 2015. PSR ¶ 79. He did submit a positive urinalysis for cocaine on February 8, 2016 and a positive urinalysis for benzodiazepine on March 22, 2016. PSR ¶ 80.

Gerald Garrett has convictions dating back over twenty years. ¶¶ 29-41. In July 2007, he entered a guilty plea in Cherry Hill, New Jersey to transferring merchandise to another and was ordered to pay a fine. PSR ¶ 32. Between December 2008 and July 2014, Mr. Garret entered guilty pleas or was adjudged guilty to theft, retail theft or shoplifting charges in eight different cases in Bucks County, PA, Cinnaminson, NJ and Philadelphia, PA. ¶¶ 33-40. He received a sentence of probation in most of those cases, and violated his probation in three of those cases. ¶¶ 33-40.

In May 2015, Gerald Garrett entered a guilty plea to charges of distributing a controlled substance, acquiring a controlled substance by fraud and aiding and abetting. PSR ¶ 41. In January 2016, he was given a time-served sentence (3 days) and three years supervised release. PSR ¶ 41. With this conviction, he has violated his supervised release. In addition, Probation Officer Petrarca has noted that Mr. Garrett's adjustment to supervision in his first year of supervised release has been poor. PSR ¶ 41. He has submitted urinalyses that were positive for controlled substances, he has missed scheduled appointments, he failed to meet with the community service coordinator, he left the Eastern District of Pennsylvania without permission and, most egregiously, committed the criminal conduct for which he is now being sentenced while under this Court's supervision. PSR ¶ 41.

What these prior convictions, positive urinalyses, missed appointments and failure to abide by his requirements of supervised release show is a continued lack of respect for the law up to this time.

**2.	The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

The seriousness of Garrett's offenses is barely reflected in his offense level of 6. The court most certainly has the discretion to give a sentence outside of the advisory guideline range, but a within-guidelines sentence is the best way to reflect the seriousness of Garrett's offenses, to promote respect for the law, and to provide just punishment for his crimes.

**3.	The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant;**

A sentence at the top of the guideline range would afford both specific and general deterrence to criminal conduct. Perhaps most important in this case, a guidelines sentence would send a message to Mr. Garrett.

**4.	The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

There appears to be a significant need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ."  § 3553(a)(2)(D).  Gerald Garrett most certainly could benefit from vocational training, as well as mental health and drug treatment.

**5.	The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

While the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the

only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit has explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.*" Booker, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. Id. at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" *Cooper*, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Indeed, the Supreme Court has held that the district courts must be cognizant of the Sentencing Guidelines throughout the sentencing process in order to assure fair, proportionate, and uniform sentencing of criminal offenders.

In the present case, the 3553(a) factors on balance support the imposition of a sentence at the top of the recommended guideline punishment for Gerald Garrett's conviction. The government also requests that the Court impose a 3 year period of supervised release and the mandatory special assessment of $100, and order the mandatory restitution of $5,000.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

*K.T. Newton*

K.T. NEWTON
Assistant United States Attorney

Dated: July 11, 2017

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been filed via ECF and thus served upon:

>Lawrence J. Bozzelli, Esquire
>Attorney for defendant Gerald Garrett

*K.T. Newton*

K.T. NEWTON
Assistant United States Attorney

DATED: July 11, 2017